394 A.2d 989

Custody of Jeffrey Allan PHILLIPS.

Appeal of Meredith Wolfe.

Superior Court of Pennsylvania.

Argued Nov. 17, 1977.

Decided Nov. 17, 1978.

Ira P. Smades, Philipsburg, with him Benjamin E. Vatz, Philipsburg, for appellant.

Timothy E. Durant, Clearfield, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

This is an appeal from a dismissal of a habeas corpus petition filed by Meredith Wolfe to obtain custody of her four year old son, Jeffrey, from the child's father, Gerald Phillips. The trial court dismissed the petition and awarded custody to the father. The mother has appealed.

The parties commenced living together at Philipsburg, Pennsylvania, in the summer of 1972 and shortly thereafter moved to the home of Meredith's parents in West Decatur, Pennsylvania. The couple later moved to Gaithersburg,

Maryland, where their son Jeffrey was born July 3, 1974. They continued to live together and care for their child until December, 1975, when they separated and Meredith took the son to Rockville, Maryland, where her mother then lived. The parties have different explanations of why they separated, but they have no bearing upon the qualifications of either parent to care for the child.

By the terms of a stipulation entered into by the parties at the beginning of the hearing and accepted by the trial court, the parties are to be treated as common law husband and wife for the purposes of determining custody of the child. The legality of this stipulation has been challenged by appellant's appellate counsel as embodying a conclusion of law that only a court could determine. This is a misreading of the stipulation. It was made only "for purposes of this hearing"; i. e., the determination of custody and is not a legal adjudication of marriage. The fact that the father and mother lived together and jointly cared for their child for eighteen months after his birth may or may not establish a common law marriage, depending upon other circumstances; but it certainly removes the father from the application of the judicial rule that "the right of a mother to the custody of an illegitimate child is superior to that of all other persons": *Commonwealth ex rel. Gifford v. Miller*, 213 Pa.Super. 269, 274, 248 A.2d 63 (1968). That conclusion was based upon the usual circumstances of a generation or more ago concerning birth out of wedlock and did not assume the continued cohabitation of the father and mother without benefit of a formal marriage. We accept the conclusion of the stipulation as helpful in determining the issue of custody.

When the parties separated in December, 1975, their then infant son, Jeffrey, was taken by his mother, Meredith, to Rockville, Maryland, where the mother rented an apartment, obtained a job and a daytime baby-sitter for her son. In February, 1976, Gerald, the father, at the conclusion of a visit to his son in Rockville, took the boy over the mother's objections and brought him back to Philipsburg to live with

the father. Two months later, April, 1976, the mother came to Philipsburg and without the father's consent took the son back to her home in Rockville. Three weeks later, May 3, 1976, the father visited his son in the mother's home and again took him from her residence without her consent and returned the child to Philipsburg where he has resided with his father ever since.

Three weeks later, on May 25, 1976, Meredith filed a habeas corpus petition seeking custody of her son. A hearing originally scheduled for June 7 was postponed until June 22, 1976, at the father's request predicated upon insufficient notice of the scheduled June 7 hearing. A hearing was held on June 22 at the conclusion of which the court directed the Office of Children's Services of Clearfield County to conduct an investigation of the homes of both parents and to report thereon to the court.

The report on the father's home circumstances was received by the court on June 30, 1976, but the one on the mother's home circumstances was not returned to the court until November 10, 1976. A further hearing was held on December 1, 1976, supplemental testimony taken and the record closed. On December 20, 1976, the trial court filed a memorandum and entered an order dismissing the petition and awarding custody of the son to his father, Gerald Phillips. This appeal followed. The son has remained in the custody of his father during the pendency of this case, a period of some twenty-eight months to date.

The sole criterion in determining a dispute between the father and a mother of a minor child over its custody is "the best interest and permanent welfare of said child": Act of June 26, 1895, P.L. 316 § 2, 48 P.S. 92; *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 107–8, 296 A.2d 625 (1972); *Commonwealth ex rel. Lee v. Lee,* 248 Pa.Super. 155, 157, 374 A.2d 1365 (1977); *Davis Appeal,* 237 Pa.Super. 516, 518, 352 A.2d 78 (1975). It was said in *Parikh, supra,* 449 Pa. at pages 107–8, 296 A.2d at pages 627—

"It is well settled that the best interest of the child is paramount in contests between parents for custody of minor children   .   .   .

"All conflicting considerations . . . must be subordinated to the child's physical, intellectual, spiritual and emotional well-being."

■ With respect to very young children a "tender years" presumption was developed by the courts to ease the burden of resolving these emotionally and factually complex disputes. Simply stated, the doctrine held that other factors being equal a child of tender years should be with the mother, although the rule was not an absolute one: *Davis Appeal, supra,* 237 Pa.Super. at p. 518, 352 A.2d 78. The tender years doctrine was not regarded as a right of the mother but merely a procedural device for determining the burden of proof: *Lee, supra* 248 Pa. at p. 157, 374 A.2d 1365. Nevertheless, the Supreme Court in a plurality opinion has held that the presumption in favor of the mother in the tender year's doctrine is constitutionally impermissible as a discrimination between the sexes: *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 299–300, 368 A.2d 635 (1977). This court has accepted the decision in *Spriggs, supra,* as decisive of the constitutional question: *McGowan v. McGowan,* 248 Pa.Super. 41, 44, 374 A.2d 1307 (1977). However, it is still the responsibility of a court in a custody hearing to evaluate the contribution of a mother to the well-being of a child of tender years, but there is to be no presumption for or against the weight to be given to that circumstance.

The trial court found that both parents are in a position to provide a suitable home for their son and that each is anxious to do so. The findings of the trial court, well supported by the record, show that Meredith, now 25 years of age, lives in Rockville, Maryland, employed as a technical assistant by a company located in Rockville known as Informatics at a salary of $9,300 a year. She works from 8:30 A.M. to 5:30 P.M. five days a week but has available the services of a reliable baby-sitter to care for Jeffrey during the period that the mother works. The sitter lives in the building next to the one where Meredith lives and is herself a mother. It was she who cared for Jeffrey during the intervals that he lived with Meredith. Meredith's apartment

is on the sixth floor of an apartment building, has two bedrooms, a living room, dining room and kitchen and is located in close proximity to schools, recreational facilities and a shopping mall. Meredith's mother lives nearby, works during the daytime but is available as an occasional sitter in the evening.

Gerald Phillips, the respondent father, lives in Philipsburg in the home of his brother, John. John and his wife have three sons ranging in current age from 4 to 10 years. Their home has five bedrooms upstairs, four rooms and a kitchen downstairs and is surrounded by a large yard. John's wife cares for Jeffrey as one of her own family while Gerald is at work. It has been stipulated that John Phillips would testify that Gerald and his son, Jeffrey, are welcome in his home as long as they care to stay. Gerald works as a mechanic for Keystone Truck Stops and earns approximately $130 a week of which he pays $20 to his brother and sister-in-law for board and room for himself and son.

The court below had the benefit of hearing the testimony and observing the demeanor of both parents. It found that both were acting out of genuine love and affection for their son, Jeffrey, and that either was well qualified to care for him. Each parent concedes that the other is a well qualified parent dedicated to the child's well-being. The court found them to be on an equal footing with regard to their desire, home circumstances and financial ability to care for their son. We are reminded of this Court's observation in a similar situation, *Davidyan v. Davidyan*, 230 Pa.Super. 599, 604, 327 A.2d 145, 148 (1974), that

> ". . . the record demonstrates a choice between exceptionally fine parents. They are obviously motivated by a bona fide interest and love of the son involved. Each has the ability, both natural and financial, to provide the best things of life for their son. It is a tragedy that their paths have separated and that they have concluded that they no longer can jointly bestow these talents and resources upon their son."

The trial court awarded custody to the father on the reasoning that since May 3, 1976, the boy had lived with his father in his uncle's home, cared for by his aunt and with three cousins of companionable age and that to forcibly remove him to another environment in another city might well bring problems and disturbance to the child. The son's life with his father in his uncle's home has been coextensive in time with this litigation. Neither party has contributed to its delays and certainly the son is not responsible for them. Nevertheless, over this substantial period of time attachments to family and environment have developed which it would almost certainly be a traumatic experience for the boy to sever.

The removal of a small child from its environment has been recognized as a factor which bears upon its emotional well-being. The court said in *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 97, 66 A.2d 300, 306 (1949):

"A child of two years of age or under will form new attachments quickly if treated kindly by those into whose care it is given. In that respect it resembles a young tree whose roots have not yet taken deep hold in the nourishing earth, but when a child is much beyond the age of two years, it becomes strongly attached to those who stand in parental relationship to it and who have tenderly cared for it. Its bonds of affection have become so strong that to sunder them suddenly may result not only in the child's unhappiness, but also in its physical injury."

As a subordinate consideration we are also impressed by the fact that a large house and yard shared with three cousins of companionable ages would appear to be a preferable environment to an apartment and that an aunt who assumes around-the-clock responsibility as surrogate mother is probably preferable to a daytime baby-sitter.

We recognize that the circumstances which at this time indicate that it would be in the child's best interest to be left with his father may change by reason of the remar-

riage of one of the parties, relocation, finances, health or other altered circumstances. It is the court's responsibility under our controlling statute, 48 P.S. 92, to safeguard the "permanent welfare" of the child and it was for that reason that the trial court awarded custody of Jeffrey Phillips to his father "until further order of court". If there should be a significant change in the circumstances of either party, this proceeding may be reopened.

We are assuming that liberal visitation rights will be granted to Meredith and that if they cannot be agreed upon by the parties, the trial court will grant them.

Affirmed.

PRICE, J., concurs in the result.

SPAETH, J., files a concurring opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

I join in the majority's opinion but wish to note that in my opinion "the judicial rule" for which the majority cites *Commonwealth ex rel. Gifford v. Miller*, 213 Pa.Super. 269, 248 A.2d 63 (1968), is no longer the law.