430 A.2d 1183

**Richard D. HUGO, Appellant,**

v.

**Jody HUGO.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1980.

Filed June 12, 1981.

2

Daniel G. Spengler, Bath, for appellant.

Dennis J. Monaghan, Bethlehem, did not file a brief on behalf of appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

4

CAVANAUGH, Judge:

The dispute in this case concerns the custody of the parties' three-year-old son, Benjamin. The father contests the lower court's award of custody to the mother. The parties were married on June 5, 1974. Their only child was born on March 8, 1977. The parties separated in August, 1979 and were divorced in November, 1979. Following the separation the mother remained with the child in the marital home which is located in Bath, Northampton County, Pennsylvania. However, in October, 1979 Mrs. Hugo took her son to live with her in Glassboro, New Jersey. Mrs. Hugo moved to New Jersey to take a teaching position.

Within a week of the mother's move to New Jersey Mr. Hugo commenced the instant proceedings seeking custody of his son. At the time of the hearing below Mrs. Hugo, now Mrs. Massey, had remarried, and Mr. Hugo was living with a Mrs. Mary Horninger. The lower court awarded dominant custody to the mother and visitation to the father on alternate weekends; one week every third month; three weeks in the summer; and certain alternating holidays.

The standard of review this court will exercise was set forth in *In re Custody of White*, 270 Pa.Super. 165, 167–68, 411 A.2d 231, 232–33 (1979):

[I]t is well established that the scope of review of this court in such disputes is of the broadest type. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977); *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587 (1976); *In re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978). Although we will not usurp the fact-finding function of the trial court, we are not bound by deductions or inferences made by the hearing judge from the facts as found. *Trefsgar v. Trefsgar*, 261 Pa.Super. 1, 395 A.2d 273 (1978); *Commonwealth ex rel. Ulmer v. Ulmer*, 231 Pa.Super. 144, 331 A.2d 665 (1974); *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa. Super. 229, 312 A.2d 58 (1973). Because of the Commonwealth's legitimate and overriding concern for the wellbeing of its children, we are required to render an indepen-

dent judgment based on the evidence and testimony and make such order on the merits of the case as to effect a just result. *Soells v. Soells,* 250 Pa.Super. 168, 378 A.2d 879 (1977); *Commonwealth ex rel. Zeedick v. Zeedick,* 213 Pa.Super. 114, 245 A.2d 663 (1968). So as to facilitate this broad review, we have consistently emphasized that the hearing court must provide us not only with a complete record. *Augustine v. Augustine,* 228 Pa.Super. 312, 324 A.2d 477 (1974), but also with a complete and comprehensive opinion which contains a thorough analysis of the record and specific reasons for the court's ultimate decision. *Martincheck v. Martincheck,* 262 Pa.Super. 346, 396 A.2d 788 (1979); *Tobias v. Tobias,* 248 Pa.Super. 168, 374 A.2d 1372 (1977); *Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976). Absent an abuse of discretion, we will not reverse a hearing judge who complies with these requirements.

After a careful review of the record and the opinion of the court below, we conclude that a remand is necessary.

The lower court found that both parents are in a position to provide a suitable home for their child. After hearing the testimony and observing the demeanor of both parents, the court found that both were acting out of genuine love and affection for their son and that both were on equal footing with regard to their desire, home circumstances and financial ability to care for their son.

The mother is employed as a teacher in Glassboro, New Jersey. While his mother is working Benjamin attends a day care school to which he has made a good adjustment. On February 28, 1980, Mrs. Hugo married Ronald Massey who is also a teacher. The couple now resides in a two-bedroom house located in a rural area. Benjamin is the only child in the home. Mr. and Mrs. Massey have a combined income of $27,600 per year. A home investigator from the Gloucester County Probation Department gave a very favorable report of the Massey home and described the interaction between mother and son as loving and pleasant.

At the time of the hearing below Mr. Hugo was living with Mrs. Mary Horninger, who had been divorced, and her two daughters. In his brief Mr. Hugo states that he and Mrs. Horninger were married on August 21, 1980. They reside in a modern bi-level home in a suburban residential development near Bath, Pennsylvania. Relatives of both mother and father live in the vicinity. Mr. Hugo is a self-employed contractor and draws $250.00 per week from his business. Mrs. Horninger works part-time, but she stated that she would assume primary care of Benjamin if Mr. Hugo is awarded custody. While at work, she would see that child care is provided. According to the custody report of the Northampton County Children and Youth Division, the father and son enjoy a close relationship; the home environment is more than adequate; and the child interacts freely with Mrs. Horninger and her daughters.

Given the above, the lower court determined that the "scales tip slightly" in favor of awarding custody to the mother for two reasons. First, the court noted its desire to maintain the status quo by continuing Benjamin in his mother's custody. Second, the court noted that the non-marital relationship of Mr. Hugo and Mrs. Horninger was a subordinate consideration influencing its decision.

Appellant argues that the preservation of the status quo should not have been considered as a controlling factor by the court. He claims that, at most, the lower court should have considered the actual custody from August 4, 1979, the date he left the marital home, until October 29, 1979, the date the instant action was commenced in determining the duration of the status quo. However, despite the fact that appellant may have acted promptly in enforcing his rights, this court has long recognized that the removal of a young child from his environment is a factor which bears on its emotional well being. *In re Custody of Phillips*, 260 Pa.Super. 402, 408, 394 A.2d 989, 992 (1978), *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 97, 66 A.2d 300, 306 (1949). Therefore, continued residence of children with one parent may be controlling. *Commonwealth ex rel.*

*Children's Aid Society v. Gard, supra; Commonwealth ex rel. Cutler v. Cutler,* 246 Pa.Super. 82, 88, 369 A.2d 821, 824 (1977). *Commonwealth ex rel. Kraus v. Kraus,* 185 Pa.Super. 167, 138 A.2d 225 (1958).

Moreover, the ten month period of time between the father's departure on August 4, 1979 and the May 29, 1980 hearing is not insignificant. In the case of *In re Custody of Phillips, supra,* and even shorter period of continued residence with one parent was found to be the controlling factor in awarding custody. There the child had resided with his father for a period of seven months prior to the custody hearing. We stated:

> The son's life with his father in his uncle's home has been coextensive in time with this litigation. Neither party has contributed to its delays and certainly the son is not responsible for them. Nevertheless, over this substantial period of time attachments to family and environment have developed which it would almost certainly be a traumatic experience for the boy to sever.

260 Pa.Super. at 408, 394 A.2d at 992.

■ However, while the lower court was correct in considering the continued residence of Benjamin with his mother, the record is insufficient to support the lower court's finding that the child's best interests will be served by granting custody to the mother. Although, as noted above, a social worker visited the home of Mrs. Massey and was able to comment on the child's surroundings and interaction with his mother, and Mrs. Massey testified during the hearing so that the trial court had an opportunity to evaluate her demeanor and credibility, at no time was Mr. Massey, the mother's new spouse, and his relationship with Benjamin considered by the lower court. Mr. Massey was not present when the social worker visited the Massey home, nor did he testify at the custody hearing. At the hearing Mrs. Massey stated that her husband and Benjamin "get along very well". Without more information concerning the relationship between Benjamin and Massey, the lower court had an insufficient basis for its conclusion that both homes are equally suitable.

Also, while the lower court stated that the non-marital relationship between the father and Mrs. Horninger permits the court to assign a factor of instability to the father's living situation, the court failed to consider the marital relationship of Mr. and Mrs. Massey. At the time of the hearing the Masseys had been married for only three months. Also the court failed to address the confusing chronology of events prior to the mother's remarriage: During cross-examination Mrs. Massey stated that she decided to marry her present husband on September 22, 1979, but that she did not meet him until September 23, 1979. Certainly the newness of the marital relationship and the seemingly unusual circumstances leading up to the marriage warranted more consideration by the court. *See Commonwealth ex rel. Buell v. Buell*, 186 Pa.Super. 468, 142 A.2d 338 (1958).

As appellant points out, the lower court made certain misstatements as to what was testified to at the hearing. In its opinion the lower court stated the following in reference to the marriage of the parties:

Shortly after Benjamin's birth, things began to go wrong with the marriage. The then Mrs. Hugo, testified that her husband started drinking heavily and spent less and less time at home. At first, she believed he was devoting more time to his business, but she came to learn that he was romantically involved with a Mrs. Mary Horninger.

A careful review of the record discloses that Mrs. Massey did not testify that she was aware of a relationship between Mr. Hugo and Mrs. Horninger. Both Mr. Hugo and Mrs. Horninger denied any romantic involvement prior to the parties' separation. Also the lower court states that at the time of the hearing Mr. Hugo was sharing Mrs. Horninger's home. While not necessarily in conflict with the lower court's characterization, Mr. Hugo notes that he does not share Mrs. Horninger's home, but that he became a joint-owner of the home as of February, 1980 and he pays the mortgage. These misstatements by the lower court cannot

be said to be insignificant especially in view of the fact that the court assigned a factor of instability to the father's living situation.

The father further claims that the lower court erred in not examining Benjamin in order to determine his preference. A child's preference, though not controlling, is a factor to be considered, so long as it is based on good reasons. *Shoup v. Shoup*, 257 Pa.Super. 263, 390 A.2d 814 (1978); *Tobias v. Tobias*, 248 Pa.Super. 168, 374 A.2d 1372 (1977). In the instant case, however, we are dealing with a child of three years. Certainly the court is not required to examine a child where the child is of such an age and maturity that the court might reasonably conclude that his preference should not be accorded *any* weight.

Another factor which the father argues should have entered into the lower court's decision is the fact that the mother is not a resident of the Commonwealth. While former case law recognized a preference for a resident parent, *Commonwealth ex rel. McLeod v. Seiple*, 193 Pa.Super. 131, 163 A.2d 912 (1960), this preference is no longer recognized. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 299, 368 A.2d 635, 639 (1977); *G.M.P.A.P.*, 280 Pa.Super. 372, 421 A.2d 769 (1980) (per Spaeth, J. with one judge concurring in the result). However, the lower court should have considered the close proximity of relatives, including both maternal and paternal grandparents, to the home of the father. *See Commonwealth ex rel. McLeod v. Seiple, supra*, 193 Pa.Super. at 137, 163 A.2d at 915. The father testified that if granted custody he would foster relationships between Benjamin and both sets of grandparents. Also he testified that his parents would share in the babysitting responsibilities while Mrs. Horninger is working.

The father next argues that the court should have considered the preference to keep male children with the father, female children with the mother. Appellant cites no appellate cases for this proposition. Although in the past such a preference may have been recognized, *see Common-*

*wealth ex rel. Zeedick v. Zeedick,* 213 Pa.Super. 114, 245 A.2d 663 (1968) (Hoffman, J. dissenting), this is no longer the case. As we stated in *Rummel v. Rummel,* 263 Pa.Super. 97, 100, 397 A.2d 13, 15 (1979) with the demise of the tender years presumption "there remains no qualification to the Rule that the burden of proof is shared equally by the contending parents."

Finally, appellant argues that because the evaluation of the mother's home performed by the Gloucester County Probation Department was paid for by him by order of the court, it was his evidence to be offered or not offered as he chose. This argument, however, displays a total misapprehension of the nature of custody proceedings. As stated above, in its pursuit of the best interests of the child, the lower court must afford the appellate court a complete record. *Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976). One requirement of this complete record is that disinterested testimony be heard concerning the fitness of each parent's home. *Rupp v. Rupp,* 268 Pa.Super. 467, 408 A.2d 883 (1979); *Lewis v. Lewis,* 267 Pa.Super. 235, 406 A.2d 781 (1979). In *Commonwealth ex rel. Cox v. Cox,* 255 Pa.Super. 508, 509, 388 A.2d 1082, 1083 (1978) this court cited the absence of disinterested testimony as a reason for remand and specifically suggested that the court seek the assistance of social welfare agencies in evaluating the living conditions of the parties. Therefore, in the instant case the lower court was not in error in admitting both reports. Also it was not error to place the cost of such evaluations on the appellant. Generally, costs inherent in a lawsuit are awarded to the prevailing party. *DuFulvio v. Holst,* 239 Pa.Super. 66, 362 A.2d 1098 (1976).

In view of the above we remand the instant case for more detailed findings of facts and a more comprehensive opinion. At that time the lower court should consider any changed circumstances, including the marital status of Mr. Hugo.

With reference to the visitation schedule, appellant argues that the lower court did not fully consider the distances between the parties' homes. On certain holidays the father

may visit with his son from 10:00 a. m. to 7:00 p. m. In his brief appellant states that this schedule requires him to drive eight hours in one day. On remand if the court once again awards custody to the mother, it should consider the burden placed on both father and son and structure the visitation schedule according to the best interests of Benjamin.

Case remanded for proceedings consistent with this opinion.