448 A.2d 1113

**COMMONWEALTH ex rel. George R. JORDAN, Appellee,**

**v.**

**Cindy JORDAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 2, 1981.

Filed July 30, 1982.

Robert F. Palmquist, Monaca, for appellant.

George E. James, Beaver Falls, for Jordan, appellee.

Before WICKERSHAM, WIEAND and BECK, JJ.

BECK, Judge:

This is a child custody dispute involving Paul who was five years old at the time of the lower court's hearing in August, 1980. He had lived his entire life with his mother until the lower court transferred custody to the father in September, 1980. The father had lived separately from the mother and child for almost four years. He had remarried subsequent to the divorce from Paul's mother. The record suggests that the mother had been the child's primary caretaker since birth. She brings this appeal.

We conclude that the grounds cited by the trial court to justify the transfer of the boy from the mother to the father are not adequately supported by the evidence or the laws of this Commonwealth,[1] and we remand this case for a hearing consistent with this opinion.

1. The trial court, after finding both parents to be "equally fit," justified its decision on the grounds that the father could provide: (1) a more "stable" home environment; (2) a two-parent family deemed

■ We hold, for the reasons stated below, that where two natural parents are both fit, and the child is of tender years, the trial court must give positive consideration to the parent who has been the primary caretaker.[2] Not to do so ignores the benefits likely to flow to the child from maintaining day to day contact with the parent on whom the child has depended for satisfying his basic physical and psychological needs.[3]

■ The removal of a young child from an established home with one parent has long been recognized as a factor which bears upon his emotional well-being. A child "becomes strongly attached to those who stand in parental relationship to it and who have tenderly cared for it." *Com. ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 97, 66 A.2d 300, 306 (1949); *accord, In Interest of Tremayne Quame Idress R.*, 286 Pa.Super. 480, 429 A.2d 40 (1981); *Jon M. W. v. Brenda K.*, 279 Pa.Super. 50, 420 A.2d 738 (1980).

■ It is clear that the continued presence of a fit parent who through daily affection, guidance, companionship, and discipline fulfills the child's psychological and physical needs is crucial to the child's emotional well being. The countless transactions between parent and child on a day to day basis build the foundation for the child's future healthy development. The Pennsylvania courts have recognized this principle and have held that the "continued residence of children with one parent is a factor which may, in certain cases, be controlling." *Com. ex rel. Cutler v. Cutler*, 246 Pa.Super. 82,

"favored" by the law; and (3) a superior physical environment. As we show, infra, factor (1) is unsupported by the evidence, factor (2) reflects an error of law, and factor (3) is insufficient, standing alone, to justify an award of custody.

2. We recognize that where the lower court awards shared custody, the considerations of the primary caretaker outlined in this opinion are not applicable. See *In re Wesley J. K.*, 299 Pa.Super. 504, 445 A.2d 1243 (1982).

3. See *Gunter v. Gunter*, 240 Pa.Super. 382, 398, 361 A.2d 307, 316 (1976); Cf. *In Interest of Tremayne Quame Idress R., supra,* 286 Pa. Superior 495 n.6, 429 A.2d at 48 n.6.

369 A.2d 821, 824 (1977). See also *Pamela J. K. v. Roger D. J.*, 277 Pa.Super. 579, 419 A.2d 1301 (1980).

■ Changes in custody can seriously disrupt a child's life. A child of tender years should not be lightly removed from a parent with whom the child has lived since birth.[4]

■ Furthermore, insofar as a parent's past performance is likely to be predictive, judicial inquiry to determine the identity of the primary caretaker will yield evidence concerning the future commitment of a parent. If in the past, the primary caretaker has tended to the child's physical needs and has exhibited love, affection, concern, tolerance, discipline and a willingness to sacrifice, the trial judge may predict that those qualities will continue.

■ Therefore, the role of the primary caretaker, without regard to the sex of the parent, is a substantial factor which the trial judge must weigh in adjudicating a custody matter where the child is of tender years.[5]

The facts of the instant case are not complicated. The child's parents, residents of New Brighton, Pennsylvania, were separated in October, 1976 and divorced in mid-1977.

---

**4.** The instant case involves a child whom the trial court apparently considered too young to interview. Where the child is of an age and/or maturity such that his or her preference should be given weight, a court might justifiably attach less importance to who had been the primary caretaker.

**5.** In *Garska v. McCoy*, W.Va., 278 S.E.2d 357 (1981) the court enumerated the following factors to be considered inter alia in identifying the primary parent:

(1) preparing and planning of meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning, and care of clothes; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers after school, i.e., transporting to friends' house or, for example, to girl or boy scout meetings; (6) arranging alternative care, i.e., babysitting, day care, etc.; (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning; (8) disciplining, i.e., teaching general manners and toilet training; (9) educating, i.e., religious, cultural, social, etc.; and (10) teaching elementary skills, i.e., reading, writing and arithmetic.

The record in the instant case contains no information concerning the role each parent played in the care of the child in the sixteen months between his birth and the parents' separation.

Except for a brief period after the separation, the mother and child have lived in New Brighton. As a matter of fact, for the two years prior to the August, 1980 hearing, they resided in New Brighton in an apartment adjacent to that of the child's maternal grandmother. The mother has not remarried. The father remarried in June, 1977, a few weeks after the divorce was granted. A child was born to the father and his new wife in December, 1977.

At the time of the divorce, the father and mother entered into an informal agreement whereby the mother retained custody of their son and the father had liberal visitation privileges. This informal agreement eventually broke down. In April, 1978, the father filed a Petition for Writ of Habeas Corpus which commenced the action subject to this appeal.

In deciding this appeal, we review the record comprehensively mindful that we are bound by the finding of facts of the lower court, but not by the inferences drawn therefrom. *Trefsgar v. Trefsgar*, 261 Pa.Super. 1, 395 A.2d 273 (1978); *Com. ex rel. Ulmer v. Ulmer*, 231 Pa.Super. 144, 331 A.2d 665 (1974). The standard in custody adjudications remains the best interests of the child. *In re Custody of White*, 270 Pa.Super. 165, 411 A.2d 231 (1979).

Families with small children are dissolved by divorce with increasing frequency. In each of the years, 1974, 1975, 1976, 1977 and 1978, there were over one million children in the United States whose parents obtained divorces.[6] Courts are often called upon to adjudicate custody disputes arising from the dissolution of these family units. In so doing, the trial judges are placed in a position where Solomonic wisdom is required. They must make a determination on the basis of testimony that is often bitter, conflicting and incomplete. They must make educated predictions about the child's future always keeping in mind the best interests of the child.

The instant case was difficult and the lower court demonstrated care and consideration. However, the court's conclu-

**6.** U. S. Department of Commerce, Bureau of the Census, Statistical Abstract of the United States, 1980, Vital Statistics, No. 123, Marriages and Divorces: 1950–1979.

sion that the father would provide a more "stable" home environment for the child is unsupported by the evidence. The judge's decision was based in part on the fact that the mother changed residences three times between October, 1976 and August, 1980, the date of the custody hearing. While it is true that the mother moved three times after she and her husband separated, such alleged "instability" was clearly temporary. Mother and child left the state only for a few months, before returning to the New Brighton area. At the time of the hearing, they had been living for two years in an apartment next to that of the child's maternal grandmother. (N.T. 41, 91.) These facts are clearly distinguishable from those of *McCann v. McCann*, 270 Pa.Super. 171, 411 A.2d 234 (1979), where this Court held that evidence that the mother had moved the child to six residences in the year prior to the hearing supported a finding of "instability." Moreover, there was no testimony at trial to support an inference that the changes in residence adversely affected the child.[7] *Cf. Com. ex rel. Steiner v. Steiner*, 257 Pa.Super. 457, 390 A.2d 1326 (1978).

The additional justification for the finding that the father would provide a more stable home environment involved vague and incomplete testimony about a motorcycle gang. Citing this testimony, the court stated: "The testimony is conflicting, but apparently members of a motorcycle gang threatened to shoot the brother of . . . the mother's boyfriend. Paul overheard the threats and thought they were going to shoot his mother." (N.T. 51, 52, 53, 153, 154.) The record reveals no evidence linking the boy's fears to negligent or irresponsible behavior by the mother or her boyfriend. This testimony, standing alone or combined with the testimony of changes in residence, does not provide an adequate basis for inferring that the father would provide a more stable home environment.

7. The trial court rejected appellee's contention that the mother's personal relationships with men subsequent to separation had shown any emotional instability. The trial court also explicitly rejected appellee's suggestion that the mother's relationship with the man who had lived with her and her child at the New Brighton apartment for eight months had adversely affected the boy.

■ The next reason advanced by the lower court for awarding custody to the father is that the law traditionally favors two parent families over single parent ones in custody disputes. The lower court misperceives the law. There is no presumption in our child custody law favoring two parent families. The sole criterion in determining custody disputes between parents is "the best interest and permanent welfare" of the child. *In re Custody of Phillips*, 260 Pa.Super. 402, 394 A.2d 989, 990 (1978).

Two parent families may not be presumed, as a matter of law, to be superior to one parent families. The existence of a step parent at times may be a positive and at other times a negative factor. It behooves the court to inquire into the quality of both natural parents' homes. To prefer two parent families may force single parents into multiple—and perhaps unfortunate—marriages in order to protect their right to custody.

■ Moreover, the clear trend has been to abolish presumptions in custody disputes.[8] As we stressed in *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648, 653 (1977), the court should avoid mechanical determinations and focus its analysis on a close scrutiny of all particular facts relevant to determining the child's best interests.

■ In this case, the record revealed no basis for the lower court's inference that the child's home environment was unstable because the mother was a single parent, or that his home environment would be more stable in the future if the child lived with his father and the second wife.[9]

8. In child custody cases, the court must "continually hew to the pole star of a child's best interests, eschewing presumption and surmise." *Morris v. Morris*, 271 Pa.Super. 19, 412 A.2d 139, 141 (1979). See, *e.g. Com. ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977); *Tobias v. Tobias*, 248 Pa.Super. 168, 374 A.2d 1372 (1977) (no presumption that mother should be awarded custody of child of "tender years"); *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648, 653 (1977) (no presumption that child's best interest will be served by being raised by a parent).

9. We also note that there was testimony that the child's maternal grandmother lives in an adjoining apartment, sees the mother and

■ The sole remaining proposed justification for the lower court's decision focused on the physical characteristics of the two home environments. The court conceded that both homes are well kept and have adequate space for the boy. The mother lives in an apartment on a main street in the borough of New Brighton while the father lives in a trailer on two rural acres, next to a substantial farm owned by his in-laws. In that setting, the boy would have access to a pond, a blackberry patch and woods, as well as to a variety of wild and domesticated animals. We assume, *arguendo*, that the testimony supports the lower court's finding that the child would have a superior play area if custody was awarded to the father. This advantage, however, is for the most part physical and not determinative. *Com. ex rel. Shipp v. Shipp*, 209 Pa.Super. 58, 223 A.2d 906 (1966); *Com. ex rel. Levinson v. Levinson*, 162 Pa.Super. 563, 59 A.2d 625 (1948).

We accordingly vacate the lower court's order and remand to the lower court for reconsideration in accordance with this opinion. Because over one and one half years have elapsed since the initial hearing, and because this opinion raises issues not adequately treated in the record, we direct the lower court to take additional testimony necessary to complete the record.[10] The Superior Court relinquishes jurisdiction over this matter.

WICKERSHAM, J., files a concurring opinion.

WIEAND, J., files a dissenting statement.

WICKERSHAM, Judge, concurring:

I agree with the well-considered opinion of my colleague Phyllis W. Beck. I hesitate to reverse trial judges in custody cases particularly when the trial judge, the Honorable

child every day, and is able to assist the mother in caring for him. (N.T. 146 *et seq.*)

10. *Com. ex. rel. Holschuh v. Holand-Moritz*, 448 Pa. 437, 292 A.2d 380 (1972); *Com. ex rel. Grimes v. Grimes*, 281 Pa.Super. 484, 422 A.2d 572 (1980) (Spaeth, J., dissenting).

Joseph S. Walko, has written such a thoughtful and complete opinion as he did. I believe, however, that the lower court opinion has two flaws that warrant reconsideration.

First, Judge Walko based his decision in part on his belief that Paul will be better off with his father's new family than with his mother alone. The lower court observes: "This type family unit has been traditionally favored over the type comprised of Cindy [Paul's mother] and Paul." I cannot imagine how labeling a family arrangement "traditionally favored" assists analysis of what will further the best interests of the child. The trial judge is virtually raising a presumption here and presumptions are now disfavored in custody cases. In fairness to the trial judge, he does add that the traditional family unit will serve Paul's best interests, yet this does not correct the basic error of substituting a formula for analysis.

Second, Judge Walko did not adequately consider the effect of taking Paul away from his mother, who has been his primary caretaker most of his life. The trial judge decided that both parties are fit parents; because both parents are fit the judge used other criteria—most notably the physical environment of the father's home—to make his award of custody. In such a close case I believe more consideration must be given to continuity of care in the child's life than access to a fishing pond, woods and a blackberry patch. See lower ct. op. at 12.

I agree with Judge Beck that where both natural parents are fit to care for a child of tender years, the trial court must give positive consideration to the parent who has been the primary caretaker. That continuity of care can be decisive is made plain in *Hugo v. Hugo*, 288 Pa.Super. 1, 430 A.2d 1183 (1981).

> [T]his court has long recognized that the removal of a young child from his environment is a factor which bears on its emotional well being. *In re Custody of Phillips*, 260 Pa.Super. 402, 408, 394 A.2d 989, 992 (1978); *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 97, 66 A.2d 300, 306 (1949). Therefore, continued resi-

dence of children with one parent may be controlling. *Commonwealth ex rel. Children's Aid Society v. Gard, supra; Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Super. 82, 88, 369 A.2d 821, 824 (1977). *Commonwealth ex rel. Kraus v. Kraus*, 185 Pa.Super. 167, 138 A.2d 225 (1958). *Id.*, 288 Pa.Superior at 6–7, 430 A.2d at 1185.

In *Pamela J. K. v. Roger D. J.*, 277 Pa.Super. 579, 589–90, 419 A.2d 1301, 1307 (1980), this court held:

Given, however, Juliet's long residence in appellant's household, it was not enough for the lower court to assure itself of appellee's and Les's fitness to have Juliet with them. The court was further required to consider the advantages and risks of a change in custody. This court has noted the importance to a child's development of a stable relationship with an established parental figure and a known physical environment. *Haraschak v. Haraschak*, 268 Pa.Super. 173, 407 A.2d 886 (1979); *Tomlinson v. Tomlinson*, 248 Pa.Super. 196, 374 A.2d 1386 (1977); *Sweeney v. Sweeney*, 241 Pa.Super. 235, 361 A.2d 302 (1976); *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976). 'There can be no question that stability is important to a child's welfare, and that in deciding who should have custody of the child it will therefore always be essential to consider how long the child has spent with [the parties].' *In re Hernandez*, 249 Pa.Super. 274, 296–297, 376 A.2d 648, 660 (1977). A child above the age of two may become strongly attached to those who stand in a parental relationship and who has [sic] tenderly cared for her, *Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Super. 82, 89, 369 A.2d 821, 824 (1977), so that to break the bonds of affection " 'may result not only in the child's unhappiness, but also in its physical injury.' " *Commonwealth ex rel. Kraus v. Kraus*, 185 Pa.Super. 167, 175, 138 A.2d 225, 229 (1958), *quoting Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 66 A.2d 300 (1949). Because of the child's need for stability in the early years, it is frequently wise to delay a change of custody until the child is older. *McCourt v. Meyers*, 268 Pa.Super. 152, 407 A.2d 875 (1979). (footnote omitted)

*See also, In Interest of Tremayne Quame Idress R.*, 286 Pa.Super. 480, 493–94, 429 A.2d 40, 47 (1981).

Therefore, I agree the case warrants reconsideration.

WIEAND, Judge dissenting:

I respectfully dissent. I would affirm the award of custody for the reasons set forth in the excellent and persuasive opinion of the trial judge. He had the opportunity to hear and see the witnesses and has prepared a careful and extensive analysis of the evidence presented. He concluded from the facts proved that the best interests of Paul Jordan would be served by placing him in the custody of his father. My independent review of the record discloses no good reason for interfering with that determination. I would not reverse the trial court's order and require reconsideration merely because its opinion did not contain an express reference to and detailed discussion of the fact that the mother had had custody of the boy prior to the hearing.