J-A19045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.B.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| S.A.S. | |
| Appellee | No. 438 EDA 2016 |

Appeal from the Order Entered January 6, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): D.R. No. 0C1201493

BEFORE:  FORD ELLIOTT, P.J.E., OTT, J., and DUBOW, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 16, 2016**

A.B.M. ("Mother") appeals from the order entered January 6, 2016, in the Court of Common Pleas of Philadelphia County, which awarded shared legal and physical custody of her son, C.S.-M. ("Child"), born in August of 2012, to his father, S.A.S. ("Father").  After careful review, we affirm.

We summarize the relevant factual and procedural history of this matter as follows.  Mother and Father married in May of 2008.  N.T., 8/14/2015, at 232.  They separated in February of 2012, due to Father's alcoholism, substance abuse, and mental health issues.[1]  *Id.* at 232-51. Following his separation from Mother, Father spent four months in an inpatient rehabilitation facility.  N.T., 4/22/2015, at 45.  Father has

_____

[1] The parties testified that they are divorced, but our review of the record does not reveal when the divorce decree was entered.

remained sober since leaving the facility in June of 2012, and now addresses his mental health issues by taking prescription medications and attending therapy. *Id.* at 44-49.

The parties agreed to a custody stipulation following Child's birth, which was entered as an order of court on September 18, 2012. Pursuant to the stipulation, Mother was awarded primary physical custody of Child, and Father was awarded supervised partial physical custody of Child four days per week for two hours at a time. In addition, the parties were awarded shared legal custody. Mother and Father later modified their custody arrangement by entering into a letter agreement, dated May 22, 2013. Pursuant to the letter agreement, Father was awarded expanded periods of partial physical custody on Mondays and Thursdays, subject to weekly tests for drugs and alcohol. On August 22, 2014, Father filed a complaint seeking shared physical custody of Child.[2]

The trial court held a custody hearing on April 22, 2015, August 14, 2015, November 13, 2015, and December 4, 2015. Following the hearing, on January 6, 2016, the court entered its order awarding Mother and Father shared legal and physical custody of Child. Specifically, the court awarded physical custody of Child to Mother on Mondays and Wednesdays overnight from pick up at school until drop off at school the following morning, and on

---

[2] The complaint is listed on the docket but not contained in the certified record.

alternating weekends from pick up at school on Friday until drop off at school on Monday. The court awarded custody to Father on Tuesdays and Thursdays overnight from pick up at school until drop off at school the following morning, and on alternating weekends from pick up at school on Friday until drop off at school on Monday. The court further directed that Father would submit to hair follicle tests in February, May, August, and November of 2016, in order to demonstrate his ongoing sobriety. Mother timely filed a notice of appeal on February 4, 2016, along with a concise statement of errors complained of on appeal.

Mother now raises the following issues for our review.

1. Did the trial court err as a matter of law and abuse its discretion by awarding the parties equally-shared physical custody of a three[-]year-old child, even though Father had previously had no overnight custody of the child by agreement because of his serious addiction and mental health issues?

2. Did the trial court err as a matter of law and abuse its discretion by making a physical custody schedule that requires the child to "ping-pong" back and forth between the parties' homes every single week day?

3. Did the trial court err as a matter of law and abuse its discretion by only requiring Father to submit to hair follicle testing for a period of less than one year, given his serious addiction issues?

4. Did the trial court err as a matter of law and abuse its discretion by finding Father credible regarding his lack compliance with alcohol testing and that Father was in "full remission" of one of his mental health disorders?

- 3 -

5. Did the trial court err as a matter of law and abuse its discretion by finding Father is the party more likely to encourage and permit frequent contact between Mother and the child?

Mother's brief at 16-17 (suggested answers and trial court answers omitted).[3]

We consider Mother's issues mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014)

_____

[3] Mother indicates in the argument section of her brief that she no longer is pursuing the second issue listed in her statement of questions involved, in which she asserted that the trial court erred and abused its discretion by crafting a custody schedule which requires Child to "ping-pong" back and forth between the parties' homes. Mother's brief at 33. Mother avers that this issue is now moot in light of an agreed upon order entered on March 29, 2016, subsequent to the filing of her appeal. *Id.* Thus, we will not address this issue.

(citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
>> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>>
>> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>>
>> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>>
>> (3) The parental duties performed by each party on behalf of the child.
>>
>> (4) The need for stability and continuity in the child's education, family life and community life.
>>
>> (5) The availability of extended family.
>>
>> (6) The child's sibling relationships.
>>
>> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>>
>> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Instantly, the trial included its findings with respect to nearly all of the Section 5328(a) factors as part of its January 6, 2016 order.[4] The court found that Section 5328(a)(1) weighed in favor of Father, and that the remaining factors either weighed in favor of both parents or did not weigh in

_____

[4] The trial court failed to address Section 5328(a)(2.1). However, there was no evidence presented during the custody hearing which related to this factor.

favor of either parent. In its opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii), the trial court explained that it found the facts of this case conducive to a shared physical custody arrangement because Child has a close relationship with both Mother and Father and is happy in both of their homes. Trial Court Opinion, 3/1/2016, at 9, 15. The court further explained that Mother and Father are both fit and capable parents, and are able to cooperate in order to make decisions in Child's best interest. *Id.* at 14-15.

Mother's first issue on appeal is that the trial court erred and abused its discretion by awarding the parties shared physical custody of Child. Mother's brief at 28-33. Mother argues that she has acted as Child's "primary caretaker" for his entire life, and that the court failed to consider the harmful impact that dramatically changing the parties' custody schedule could have on Child. *Id.* at 28, 31-33. Mother also asserts that the court based its decision not on the best interest of Child, but on a desire to be fair to Father. *Id.* at 31-33.

Initially, we observe that Mother's argument appears to invoke the so-called "primary caretaker doctrine." Prior to the implementation of the current Child Custody Act in 2011, this doctrine instructed that, "in cases involving an award of primary custody 'where two natural parents are both fit, and the child is of tender years, the trial court must give positive consideration to the parent who has been the primary caretaker.'" *M.J.M. v. M.L.G.*, 63 A.3d 331, 337 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909

(Pa. 2013) (quoting **Commonwealth ex rel. Jordan v. Jordan**, 448 A.2d 1113, 1115 (Pa. Super. 1982)) (emphasis omitted).

However, it is well-settled that courts in custody matters are no longer obligated to give positive consideration to a parent's status as a primary caretaker. As this Court has explained,

> The language of [the Child Custody Act] is clear. It explicitly provides that all relevant factors shall be considered by the trial court, and the only factors that should be given "weighted consideration" are factors that "affect the safety of the child[.]" [23 Pa.C.S.A. § 5328(a).] When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. If the Pennsylvania Legislature intended for extra consideration be given to one parent because of his or her role as the primary caretaker, it would have included language to that effect. Stated another way, the absence of such language indicates that our Legislature has rejected the notion that in analyzing both parents, additional consideration should be given to one because he or she has been the primary caretaker.
>
> Furthermore, the consideration the primary caretaker doctrine sought to address (which parent spent more time providing day-to-day care for a young child) is addressed implicitly in the enumerated factors. **See**, **e.g.,** 23 Pa.C.S.A. §§ 5328(a)(3) ("The parental duties performed by each party on behalf of the child."); (a)(4) ("The need for stability and continuity in the child's education, family life and community life."). The considerations embraced by the primary caretaker doctrine have been woven into the statutory factors, such that they have become part and parcel of the mandatory inquiry.
>
> ***
>
> We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry. As discussed above, a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the section 5328(a)

- 8 -

factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16). It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. Our decision here does not change that.

*M.J.M.*, 63 A.3d 338-39 (some citations and quotation marks omitted) (footnote omitted).

Thus, while the trial court in the instant matter acknowledged in its January 6, 2016 order and its opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii) that Mother has served as Child's primary caretaker throughout his life, the court was not obligated to give this consideration any particular amount of weight. In addition, the court was free to conclude that this consideration was outweighed by other important evidence presented in the case. Here, the trial court found that Mother has been resistant to allowing Father to spend significant periods of time caring for Child, and that Father would have been more involved in Child's life if Mother would have allowed it. *See* Trial Court Opinion, 3/1/2016, at 7-8. Our review of the record supports the court's finding.

Further, as the custody hearing progressed, the trial court entered interim orders which expanded Father's partial physical custody to include overnights with Child. No evidence was presented during the custody hearing which indicated that Child has struggled or suffered because of Father's increased custody time. When asked about Child's adjustment to

Father's additional periods of custody, Mother testified that Child now asks who is going to pick him up at the end of the day, and who is going to be there when he wakes up. N.T., 12/4/2015, at 60. When asked whether she has any concerns about Father's ability to meet Child's needs, Mother testified only that Father continues to use fabric softener when doing Child's laundry, despite her concern that it was causing, or could cause, Child's eczema to flare up. N.T., 11/13/2015, at 148-49. Mother was not able to articulate any other problems resulting from Father's increased custody time. It was proper for the trial court to conclude that Child's best interest would be served by spending equal time with both of his parents, and we discern no abuse of discretion.

In her third issue on appeal, Mother argues that the trial court abused its discretion by ordering Father to submit to hair follicle tests for less than a year, despite his lengthy history of drug and alcohol abuse. Mother's brief at 34-38. Mother specifically challenges the court's finding that Father has been sober for three years. *Id.* at 36. According to Mother, Father submitted to only a fraction of the alcohol tests that he was required to submit to in 2013, pursuant to the parties' May 22, 2013 letter agreement, and he did not submit to any alcohol tests at all in 2014. *Id.* at 35.

The trial court addressed this claim in its opinion as follows.

Throughout the course of this trial the Court has always considered the safety of the child first. The Court continued to order drug and alcohol testing; all of which were negative. Additionally, the Court required an alcohol strip test before and

after every overnight with Father. All of these tests were negative. Mother testified that when she was unavailable, both her Father (maternal grandfather) and her current husband performed the alcohol strip test on Father. Father will continue with his treating physicians and therapist who will continue to assess Father's continued sobriety. Based on Father's past three years of sobriety, the Court still required hair follicle testing for another year. Mother is not without recourse if she ever feels Father's sobriety is in question. The Court considered all of the evidence presented and weighted it, along with all of the custody factors in rendering its decision. The Court committed no error of law nor did it abuse its discretion in making this determination.

Trial Court Opinion, 3/1/2016, at 10.

With respect to Mother's claim that Father failed to submit to the alcohol testing required by the parties' letter agreement, Father readily admitted to this problem during the custody proceedings. Father testified that he learned in approximately the summer of 2013 that his weekly urine screens were testing for drugs only and not for alcohol. N.T., 4/22/2015, at 24, 51, 185. Despite this discovery, Father did not recall being tested for alcohol during all of 2014, nor did he report making an effort to be tested for alcohol.[5] *Id.* at 54-55, 161-63. Father stated that he notified Mother shortly after learning that his urine screens were not testing for alcohol. *Id.*

---

[5] According to Father's counsel, exhibit M-3, which is not contained in the certified record on appeal, indicates that Father began submitting to breathalyzer tests in September of 2013 after he discovered that he was not being tested for alcohol. N.T., 4/22/2015, at 186. These tests continued until December 2, 2013. *Id.* Reportedly, exhibit M-3 is a document "show[ing] the testing [Father] submitted at the Charles O'Brien Treatment Center at Penn from August 2012 to . . . January 2015[.]" *Id.* at 151.

at 24-25, 52, 185. Father explained that Mother was well aware that he was not being tested for alcohol in 2014, but that Mother did not raise any concerns with regard to Father's sobriety. *Id.* at 25-26, 52, 67, 187. Father further explained that he did not seek out alcohol testing in 2014 because "I was under the impression that I had a new agreement in place with [Mother] and her attorneys at the time that were [*sic*] going to get rid of my weekly testing . . . ." *Id.* at 208.

Despite Father's failure to obtain regular alcohol testing in 2014, our review of the record confirms that sufficient evidence was presented to support Father's sobriety. Father testified that he has not consumed alcohol since February of 2012, and that he continues to address his history of alcoholism by attending two to five Alcoholics Anonymous meetings per week, along with weekly therapy sessions. *Id.* at 44-49. It was within the trial court's discretion to accept this testimony, and to conclude that less than a year of hair follicle testing was sufficient to ensure Father's ongoing sobriety and Child's safety. Mother's claim that Father may have failed to maintain his sobriety at some point over the last several years is mere speculation, and has no support in the record.

Mother's fourth issue is that the trial court erred and abused its discretion by finding that Father is in "full remission" with respect to one of

his mental health disorders.[6]  Mother's brief at 38-40.  The crux of Mother's argument is that the court minimized the seriousness of Father's mental health issues, and relied improperly on the testimony of Father's psychiatrist, Dr. Marja Mattila-Evenden, who indicated during the custody hearing that Father is in "full remission" with regard to major depressive disorder and anxiety disorder.  *Id.*  Mother takes issue with this testimony because "the term 'in remission' is not even a qualifier under the coding system for general anxiety disorder in the Diagnostics and Statistics [*sic*] Manual – 5."[7]  *Id.* at 39.

The court responded to Mother's concerns with respect to Father's mental health as follows.

_____

[6] As part of this issue, Mother repeats a portion her previous argument relating to Father's failure to comply with alcohol testing, and the trial court's decision to subject Father to hair follicle testing for less than a year.  *See* Mother's brief at 40.  Because we have already rejected this argument, we need not address it again.

[7] Mother appears to be referring to the fifth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, commonly referred to as the "DSM."  "The DSM is a 'categorical classification system that divides mental disorders into types based on criteria sets with defining features. . . . [T]he DSM is an authoritative compilation of information about mental disorders and represents the best consensus of the psychiatric profession on how to diagnose mental disorders.'"  *Commonwealth v. Hollingshead*, 111 A.3d 186, 190 n.4 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1199 (Pa. Super. 2015) (quoting *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 458 S.W.3d 552, 556 n.1 (Tex. App. 2014)).

The Court found Dr. Mattila-Evenden testified credibly at trial. Father was very forthcoming regarding his mental health diagnosis. He has been in regular therapy and also sees a psychiatrist. Dr. Mattila-Evenden has been treating Father since July 2013. She testified he is in full remission. Father will continue treating with Ms. Crauciuc and Dr. Evenden. Mother also meets weekly with her individual therapist.

It is understandable that Mother sees things as how they were throughout the parties' marriage. The Court recognizes that before the birth of their child, Mother endured some terrible times during Father's addiction. Father readily acknowledges this fact and testified credibly and with great specificity as to these times. Nevertheless, Father has been sober since before the birth of their child. Whether or not something is a "qualifier" under the coding system of the PSM-S [*sic*] is not what is relevant here. There was only credible evidence presented at trial that Father poses no risk of harm to the child. Conversely, Mother was found to have changed and contradicted her testimony on a number of occasions throughout the trial. The Court neither erred nor abused its discretion in making this determination. What is also of great relevance is that the child's best interests are served through this Court's January 6, 2016 order.

Trial Court Opinion, 3/1/2016, at 13-14.

Our review of the record confirms that Mother's claim merits no relief. Dr. Mattila-Evenden testified during the custody hearing that Father has been diagnosed with major depressive disorder, generalized anxiety disorder, and alcohol and sedative dependence. N.T., 12/4/2015, at 27. However, Dr. Mattila-Evenden clarified that Father is in remission with regard to all of these diagnoses, and that he is not currently suffering from symptoms of depression or significant anxiety. *Id.* at 29, 32-33, 39, 41-43. Thus, the court did not abuse its discretion by declining to weigh Father's mental health diagnoses against him. While Mother protests that the court's

use of the term "remission" is improper pursuant to the DSM as it relates to Father's generalized anxiety disorder, Mother's argument is mere pedantry and does not require reversal of the subject custody order.

Finally, Mother claims in her fifth issue on appeal that the trial court abused its discretion by finding that Father is more likely than Mother to encourage and permit frequent and continuing contact with the other parent pursuant to Section 5328(a)(1). Mother's brief at 40-44. Mother argues that the court concluded erroneously that she was resistant to providing Father with additional custody time. *Id.* at 41-42. Mother further contends that Father is uncooperative and refuses to discuss basic parenting issues with her. *Id.* at 42-44. In particular, Mother emphasizes that Father chose not to invite her to Child's third birthday party. *Id.* at 42-43.

In its opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii), the trial court discussed its analysis of Section 5328(a)(1) as follows.

> Mother focuses on an isolated occasion where she was originally not included in the child's third birthday party planned by Father. To Mother's credit, Father was included in the first two birthday parties planned by Mother. Moreover, Mother's current husband testified that they already had a family party for the child's third birthday. Father was not included in this party. Of significance, is that the parties were involved in acrimonious litigation at the time of the child's third birthday. Ultimately, Mother did attend the third birthday party planned by Father. The Court considered all of this testimony and gave it the appropriate weight in rendering its decision.
>
> ***
>
> Moreover, Mother acknowledged denying the child time with his Father on Father's Day 2014. Mother testified that it was "just a

- 15 -

day" and spent that day with her husband and his family instead. Mother's testimony regarding this issue was apathetic. Father testified credibly that each time he requested additional time, it took Mother months before addressing it. Father requested to have additional time when Mother went out of town or was unavailable to care for the child overnight. Mother refused and gave the child to her parents rather than allow the child and Father to spend additional time together. On the other hand, maternal grandmother testified that Father would call her when she was in town to see if she wanted to join him and the child at the park or at a music class, even though Father had limited time with the child. When considering the totality of this evidence, the Court found this Factor weighed heavily in favor of Father. Therefore, the Court did not err nor abuse its discretion in making this determination.

Trial Court Opinion, 3/1/2016, at 10-11 (citations to the record omitted).

Once again, we conclude that the record supports the trial court's findings. The parties presented extensive testimony during the custody hearing concerning the circumstances surrounding Child's third birthday party. Father's girlfriend, J.D., testified that Mother was not initially invited to Child's third birthday party because she and Father believed Mother would be holding a separate party for Child, and because Father thought it would be inappropriate to have a party together due to the ongoing custody litigation. N.T., 8/14/2015, at 13-14, 75-76. The court was free to accept this explanation.

Further, it is clear from the record that the trial court did not consider Father's initial failure to invite Mother to the birthday party to be particularly unusual or troubling. *See, e.g.*, 8/14/2015, at 67 ("[L]ook, you're not going to have parties together anymore. . . . I don't find it as odd as they didn't -- if they didn't invite her at all."). The court was well within its discretion

- 16 -

when it concluded that this incident should not cause Section 5328(a)(1) to weigh against Father.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by awarding Mother and Father shared legal and physical custody of Child. Accordingly, the court's January 6, 2016 order is affirmed.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2016