J-A23015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.W. | : | No. 1104 EDA 2017 |

Appeal from the Order Entered March 23, 2017
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  2014-00458

BEFORE:   PANELLA, J., DUBOW, J., and FITZGERALD*, J.

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 30, 2017**

J.C. ("Mother") appeals from the order entered March 23, 2017, in the Court of Common Pleas of Montgomery County, which denied her petition to modify custody with respect to her minor son, J.W. ("Child"), born in December 2012. After careful review, we reverse in part and affirm in part.

The trial court summarized the relevant factual and procedural history of this matter as follows.

> Mother and [J.W. ("Father")] have known each other for eighteen [] years.  They were never married, but lived together in Blue Bell, PA from the Child's birth until September 2013, when Father moved out. Currently, Mother lives in Roslyn, PA and Father lives in Blue Bell, PA. . . .
>
> On May 26, 2016, the parties entered into a Custody Stipulation granting the parties shared legal and physical custody. Per the parties' Custody Stipulation, the parties alternate every other weekend starting after school on Friday until Monday

_____

* Former Justice specially assigned to the Superior Court.

morning when the Child was dropped off at school. The non-custodial parent from the prior weekend would have the Child overnight on Monday and Tuesday. The custodial parent from the prior weekend would have custody of the Child overnight on Wednesday and Thursday. Then the non-custodial parent from the prior weekend would have the Child for the weekend. For example, if Father had custody of the Child Friday, Saturday, and Sunday overnight, Mother would then have custody Monday and Tuesday overnight and Father would have Wednesday and Thursday overnight, and Mother would then have custody of the Child Friday, Saturday, and Sunday overnight. The Custody Stipulation also included a holiday provision, a vacation provision, a transportation provision, and an income tax return provision.

On August 4, 2016, Mother filed a Petition to Modify Custody seeking primary physical custody of the Child. Mother's petition averred, *inter alia*, that Father said negative things to the Child about Mother, that Father is very difficult to communicate with regarding the Child, and that Father has had confrontations with other adults in front of the Child.

Trial Court Opinion, 5/10/17, at 2-3.

The trial court conducted a hearing on Mother's petition on March 20, 2017, and March 23, 2017. Following the hearing, the court entered the order complained of on appeal, in which it denied Mother's petition to modify, directed the parties to participate in co-parenting counseling, directed Father to complete anger management treatment, and provided that Child would have daily telephone contact with the noncustodial parent. The order also directed the parties to comply with the court's Custody - General Rules of Conduct, which it attached to the order. Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Mother now raises the following issues for our review, which we have reordered for ease of disposition.

- 2 -

1. Whether the trial court erred and committed an abuse of discretion by concluding that, in light of the competent record evidence to the contrary, the parties had the minimal degree of cooperation to sustain a shared physical custody arrangement?

[2.] Whether the trial court erred in ordering the parties to attend indefinite co-parenting counseling, in light of the trial court's finding that Mother has been subjected to physical, emotional and mental abuse by Father, and that her fear of Father was justified, and the evidence of Mother's previous experience with co-parenting counseling?

[3.] Whether the trial court erred and committed an abuse of discretion when it found that statutory factors #2, #8 and #13 of Section 5328(a) weighed in favor of Mother, and yet still concluded that a shared physical custody arrangement was in the best interests of the child?

4. Whether the trial court's conclusion that shared physical custody is in the best interests of the child is unreasonable in light of the evidence that Mother had been the primary caretaker of the child since birth and Father had threatened and intimidated both the current and previous daycare providers?

Mother's Brief, at 6-7 (trial court answers and suggested answers omitted).

We consider these issues mindful of our well-settled standard of review.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." **S.W.D. v. S.A.R.**, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a)(1)-(16).

Instantly, the trial court announced its findings with respect to nearly all of the § 5328(a) factors at the conclusion of the custody hearing on March 23, 2017.[1, 2] The court found the majority of the factors weighed equally in favor of both parties, or did not weigh in favor of either party. **See** N.T., 3/23/17, at 30-40. The court further found (a)(2), (8), and (13) weighed in favor of Mother. **See id**. at 30-40. In discussing the factors, the court expressed concern regarding Father's history of malicious behavior. The court found Mother has been a victim of abuse at the hands of Father, although there was not currently any threat of harm to either Mother or Child. **See id**., at 31-32. The court further found Father engaged in subtle attempts to turn Child against Mother, and has engaged in "extremely aggressive behavior," which has worsened the already high level of conflict between the parties. **See id**., at 37, 39.

---

[1] While the trial court failed to address (a)(2.1) in its findings, there was no evidence presented during the custody hearing which related to this factor. The court did not discuss any other relevant factor under (a)(16).

[2] As discussed in greater detail below, the trial court also discussed the four factors set forth by this Court in **Wiseman v. Wall**, 718 A.2d 844 (Pa. Super. 1998), pertaining to shared custody awards.

Nonetheless, the trial court observed that Father's behavior improved considerably after Mother filed her petition to modify. *See id*., at 33-34. The court encouraged Father to maintain his more amicable demeanor, and cautioned him that a return to his previous behavior would not be tolerated, stating as follows.

> You clearly have the ability to control yourself because as soon as this petition was filed you've done beautifully, actually. I told you I went through the communications, and in an instant, that faucet turned off, and as I look through your communications in the later part of 2016, you are completely civilized and respectful and cooperative and collaborative, and that's what it's supposed to be. That's what I really want from you and expect from you, but more importantly what your son needs from you for his best interest. And then I add to that the communications that your counsel shared with me today and, again, positive, respectful.
>
> [Mother] mentioned that you are aggressive and name calling and nasty, and then a petition is filed and you behave yourself. So my challenge is how do I make sure that you continue on this positive path after today.
>
> I'm not asking you to give me the answer, but I'm looking at you all and talking because I need to impress upon you how important that is, because when I get to what I'm going to do today and then you walk out the door with no petition pending, then the challenge is on you to maintain what you've done.
>
> And I can assure you if it does recur and if you degenerate back or disintegrate back to that name calling, you will be back here, and my response to it will be very different. But I'm giving you credit today for what I've really seen as your positive ability to collaborate and coparent. I think there are things that both of you can do to recognize how to work better with each other.

*Id*., at 33-35.

Upon completing its analysis of the § 5328(a) factors, the court concluded the Child's best interest would be served by maintaining the current shared custody schedule. *See id*., at 41. The court placed particular emphasis on the parties' love for Child, their competence as parents, and Child's need for stability. *See id*., at 35-38. The court explained that it considered awarding the parties custody on alternating weeks, so that they would have less contact with each other, but decided against that, explaining, "I believe right now [C]hild needs to have the consistent time each week with both of you." *Id*., at 41.

In her first issue, Mother argues that the trial court erred and committed an abuse of discretion by denying her petition to modify, because she and Father lack the minimal degree of cooperation necessary to share physical custody of Child. *See* Mother's Brief, at 28-41. Mother argues she and Father have a contentious relationship and suffer from poor communication, due to Father's hostility and frequent insults. *See id*., at 32-40. Mother relies on *Wiseman*, in which this Court held that trial courts must analyze four factors when considering a shared custody award.

> Among the factors which must be considered in awarding shared custody are the following: (1) both parents must be fit, capable of making reasonable child rearing decisions and willing and able to provide love and care for their children; (2) both parents must evidence a continuing desire for active involvement in the child's life; (3) both parents must be recognized by the child as a source of security and love; (4) a minimal degree of cooperation between the parents must be possible.

718 A.2d at 848 (citations omitted).

In its opinion, the court explains it found Mother and Father do have the minimal degree of cooperation necessary to share custody of Child. **See** Trial Court Opinion, 5/10/17, at 7-9. The court directs our attention to the following on-the-record discussion of this finding at the conclusion of the custody hearing.

> And the fourth is there must be a minimal degree of cooperation between the parents. It must be possible, and I find that it is. Your communication is not perfect, and I will address that more specifically, later, but there is certainly, I would say, more than a minimal ability that you both have to cooperate with each other, and I think that that is more clearly demonstrated for this Court in the communication that I've seen since the filing of the last petition.
>
> So I want to say first, that [Mother], I understand why you filed this petition because I've seen the kind of communication that you were dealing with; so I understand it. And the fact that the filing of the petition caused a decrease in conflict, and I find that it did, I think it was a positive move.
>
> But it's clear to me from that time from last August until today that the parties are capable of cooperating with each other. You both can do better, and I'll talk to you a little bit more about that. But you certainly possess that required minimal degree and more.
>
> So I think when I look at the **Wiseman** factors, it certainly -- this is certainly a case where a shared physical custody agreement is not precluded in any way.

N.T., 3/23/17, at 29-30.

At the outset, we must address the ongoing precedential value of **Wiseman**. This Court decided **Wiseman** in 1998—long before the implementation of the current child custody statute, which took effect on

- 7 -

January 24, 2011. *See* 23 Pa.C.S.A. § 5321-5340. Upon review, it is clear that the implementation of the current statute, and of § 5328(a) in particular, rendered the *Wiseman* shared custody factors obsolete. Although phrased somewhat differently, each of the *Wiseman* factors is now contained in § 5328(a).

For example, the *Wiseman* factor requiring parents have a minimal degree of cooperation can be found at (a)(13), requiring that trial courts consider, among other things, "[t]he level of conflict between the parties and the willingness and ability of the parties to cooperate with one another." If a court conducts an analysis of the § 5328(a) factors, it will—by necessity— consider the *Wiseman* factors as well. Consideration of both the § 5328(a) factors and the *Wiseman* factors is redundant.

Moreover, as noted above, the current child custody statute directs trial courts to consider each of the § 5328(a) custody factors when making any award of custody, whether primary, partial, or shared. As this Court has made clear, the statute does not provide that any one factor must control the court's decision, but only that courts should give weighted consideration to those factors affecting the safety of the child. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). Thus, the rule in *Wiseman* that parents must have a minimal degree of cooperation in order for a court to award shared custody contradicts the plain language of the current statute, as well as our precedent interpreting that language, which makes clear that courts must merely

consider the parties' level of cooperation when making an award of custody, and that poor cooperation need not be dispositive.[3]

Here, it is clear the trial court complied with (a)(13) by considering the level of conflict between Mother and Father, as well as their difficulty cooperating. The court discussed this factor on the record at the conclusion of the custody hearing, as follows.

> Thirteen: The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. I'm not going to repeat what I said. This is certainly a high-conflict relationship made worse by [F]ather's past extremely aggressive behavior, and that kind of behavior certainly can have a negative consequence on the child moving forward. So that factor by virtue of the past conflict favors [M]other.
>
> But I do need to note, as I did earlier, that the direct conflict is minimal right now because we have this case pending. And I cannot stress to you both enough -- [Father], in particular to you, the need for you to find ways to manage your temper and your anger and find ways to communicate that are not going to display that to [M]other or to [Child].

N.T., 3/23/17, at 39-40.

While the trial court found (a)(13) favored Mother, the court was not required to place any particular amount of weight on this factor. The court was free to conclude that other considerations, including the parties' love for Child, their competence as parents, Child's need for stability, and the benefit

---

[3] We acknowledge that this Court has applied the **Wiseman** factors, without explanation, in one published opinion since the implementation of the current child custody statute. **See R.S. v. T.T.**, 113 A.3d 1254, 1260 (Pa. Super. 2015), *appeal denied*, 117 A.3d 298 (Pa. 2015).

Child receives from spending consistent time each week with both parties, were more important when determining Child's best interest.

Further, to the extent the **Wiseman** factors still retain some persuasive value, the record supports the trial court's finding that Mother and Father are able to cooperate minimally. As observed by the court, Father's behavior improved after Mother filed her petition to modify in August 2016, and the parties have been able to handle custody issues in a usually-civil manner since that time. Mother herself testified concerning one instance in December 2016, during which Father asked her to pick up Child on one of Father's custodial days, so that Father could attend a work event. **See** N.T., 3/20/17, at 46-47, 101-104. Father notified Mother several days in advance, Mother agreed, and Father thanked Mother later for assisting him. **See id**.; **see also** Exhibit M-6 (e-mails between Mother and Father). Thus, we discern no abuse of discretion.

We next consider Mother's second issue, in which she argues the trial court erred by ordering her to attend co-parenting counseling with Father, in light of the court's finding that Father has abused her, and in light of Mother's negative experiences with co-parenting counseling in past. **See** Mother's Brief, at 55-59. Mother argues that requiring her to attend co-parenting counseling implies she is partly responsible for Father's abuse, and that co-parenting counseling would only empower Father to engage in further abuse. **See id**., at 56-58. Mother further argues that she attended co-parenting counseling with Father prior to the custody hearing, and that counseling was futile due to

Father's anger and aggression. *See id*., at 58-59. We agree with Mother. The trial court erred by ordering her to attend co-parenting counseling.

Mother directs our attention to § 5333 of the Child Custody Act, which provides as follows.

> **(a) Attendance.--**The court may, as part of a custody order, require the parties to attend counseling sessions.
>
> **(b) Abuse.--**In situations involving abuse, the court may order individual counseling for the abuser *but may not order the parties to attend joint counseling*.
>
> **(c) Verification.--**Each party's participation in the counseling sessions shall be verified by the counselor.
>
> **(d) Costs.--**The court may order a party to pay all or part of the costs of the counseling sessions under this section.

23 Pa.C.S.A. § 5333 (emphasis added).

The trial court addressed this issue in its opinion as follows.

> As previously stated, at Custody Factor Two (2), this [c]ourt concluded that there is no risk of harm to the child, and that there is not any actual risk of harm to Mother. This [c]ourt did find Mother's fears real based on past abuse by Father, which this [c]ourt concluded explained Mother's fear. The [c]ourt also expressed its concerns regarding the potential emotional damage that could be caused by the conflict in the relationship. However, this [c]ourt concluded that the past abuse by Father did not prevent the [c]ourt from ordering co-parenting counseling.
>
> Additionally, this [c]ourt did not abuse its discretion by leaving the determination of the duration of co-parenting counseling up to the professional co-parenting counselor. Based upon the evidence, the [c]ourt could not determine a finite duration for counseling. Moreover, as with all custody issues, either party may petition the [c]ourt to modify provisions of the Custody Order.

Based upon the past conflict in the parents' relationship, the [c]ourt concluded co-parenting counseling would be beneficial to them both and in the child's best interest. Accordingly, based upon the evidence of record, this [c]ourt did not abuse its discretion by ordering the parties to attend co-parenting counseling to be continued at the discretion of the professional co-parenting counselor.

Trial Court Opinion, 5/10/17, at 12.

During the custody hearing, Mother presented extensive testimony concerning Father's abusive behavior. For example, Mother described one incident in October 2013, during which Father physically assaulted her. *See* N.T., 3/20/2017, at 15-17. Mother testified,

[Father] assaulted me when my son was in the high chair. He went to get my phone out of my purse. We had been arguing the night before. He hadn't been staying there. He was getting his stuff to move out. And he took my phone over something we were arguing about, and I asked to get it back. He threw me into the door. Then when I got up, he smashed my phone, he kicked me. And my son was screaming and crying in his high chair.

\*\*\*

There was a woman who was walking her dog in the neighborhood, heard me screaming, help me, help me, and called 911, and [Father] had left at this point. I got my son, and I used her phone to call the police.

*Id*., at 16-17.

Mother supported her account of events by presenting a copy of a police report, which the trial court entered into evidence as Exhibit M-1. The report described the aftermath of Father's abuse, and noted that Mother had "several scratches on [her] neck and her right ear was enflamed." Exhibit M-1. The court credited Mother's testimony, both in its findings of fact at the conclusion

of the custody hearing, and in its opinion. *See* N.T., 3/20/17, at 31 ("And I find certainly there is credible evidence of some past abuse committed by [F]ather against [M]other. I think the extent of that abuse is not clear in my mind, but certainly there is enough past abuse that justifies [M]other's fear.") Thus, pursuant to the plain language of § 5333(b), this custody case was a "situation[] involving abuse," and the court was not permitted to require Mother to attend co-parenting counseling with Father. Accordingly, we reverse that portion of the court's order.

In her third issue, Mother argues the trial court abused its discretion by concluding that a shared custody arrangement would be in Child's best interest, despite weighing § 5328(a)(2), (8), and (13) in her favor. *See* Mother's Brief, at 42-55. Mother argues these findings should have been dispositive, resulting in an award of primary physical custody. *See id*., at 43. Mother is not entitled to relief.

As discussed above, § 5328(a) does not provide that any one factor, or combination of factors, must control a trial court's custody decision, but only that courts should give weighted consideration to those factors affecting the safety of the child. Here, the trial court considered Mother's testimony concerning Father's history of abuse, his attempts to turn Child against her, and his aggressive behavior resulting in a high level of conflict between the parties. The court found Mother's testimony to be credible, at least in part, and weighed (a)(2), (8), (13) in her favor. However, because the court did not find that Father posed any risk to Child's safety, it was within the court's

- 13 -

discretion to conclude that other considerations were more important when determining Child's best interest.

In reaching this conclusion, we stress that we obviously do not condone Father's malicious behavior. Father's history of committing abuse against Mother is particularly troubling.

Nonetheless, it is well-settled that this Court cannot reverse a trial court's decision merely because the record could also support a different result. *See In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003). As this Court has explained,

> the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

Importantly, we are satisfied the trial court will not tolerate any further abuse by Father. The court made clear to Father at the conclusion of the custody hearing that his past behavior was unacceptable, and that, should he devolve to his old ways, "my response to it will be very different." N.T., 3/23/17, at 34.

Finally, we address Mother's fourth issue, in which she argues she should have been awarded primary physical custody of Child pursuant to the "primary caretaker doctrine," and because Father has threatened and

intimidated Child's daycare providers. ***See*** Mother's Brief, at 60-68. Mother argues she has performed most parental duties for Child throughout his life, and especially during her time living with Father. ***See id***., at 60-64. Mother further argues the court did not discuss Father's hostility toward Child's daycare providers when announcing its decision, which shows the court failed to conduct a "full inquiry" into Child's best interest. ***Id***., at 64-68.

Initially, we reject Mother's reliance on the "primary caretaker doctrine." Prior to the implementation of the current child custody statute in 2011, this doctrine instructed that, "in cases involving an award of primary custody 'where two natural parents are both fit, and the child is of tender years, the trial court must give positive consideration to the parent who has been the primary caretaker.'" ***M.J.M.***, 63 A.3d at 337 (quoting ***Commonwealth ex rel. Jordan v. Jordan***, 448 A.2d 1113, 1115 (Pa. Super. 1982)) (emphasis omitted).

However, trial courts in custody matters are no longer obligated to give positive consideration to a parent's status as a primary caretaker. As this Court has explained,

> The language of this statute is clear. It explicitly provides that all relevant factors shall be considered by the trial court, and the only factors that should be given "weighted consideration" are factors that "affect the safety of the child[.]" [23 Pa.C.S.A. § 5328(a).] When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. If the Pennsylvania Legislature intended for extra consideration be given to one parent because of his or her role as the primary caretaker, it would have included language to that effect. Stated another way, the absence of such language

indicates that our Legislature has rejected the notion that in analyzing both parents, additional consideration should be given to one because he or she has been the primary caretaker.

Furthermore, the consideration the primary caretaker doctrine sought to address (which parent spent more time providing day-to-day care for a young child) is addressed implicitly in the enumerated factors. **See**, **e.g.,** 23 Pa.C.S.A. §§ 5328(a)(3) ("The parental duties performed by each party on behalf of the child."); (a)(4) ("The need for stability and continuity in the child's education, family life and community life."). The considerations embraced by the primary caretaker doctrine have been woven into the statutory factors, such that they have become part and parcel of the mandatory inquiry.

\*\*\*

We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry. As discussed above, a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the section 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16). It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. Our decision here does not change that.

**Id**., at 338-39 (some citations and quotation marks and footnote omitted).

Here, the court acknowledged during its discussion of § 5328(a)(3) that Mother served as Child's primary caretaker during "his earliest days as a newborn and infant." N.T., 3/23/17, at 35. However, the court found Mother and Father now both perform significant parental duties on Child's behalf. **See id**. The record supports this finding, and the court was free to weigh Mother's prior status as Child's primary caretaker as it saw fit.

In addition, while the court did not discuss Father's history of conflict with Child's daycare providers, the court talked at length about Father's behavior in general terms. We reject Mother's contention that the court was required to discuss this specific issue on the record in order to conduct a sufficient analysis of Child's best interest. To the contrary, "there is no required amount of detail for the trial court's explanation [of the § 5328(a) factors]; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M.**, 63 A.3d at 336. No relief is due as the trial court did not abuse its discretion.

Based on the foregoing, we reverse the portion of the March 23, 2017 order directing Mother to attend co-parenting counseling with Father. Because we conclude that trial court did not abuse its discretion or commit an error of law by denying Mother's petition to modify and by maintaining the parties' award of shared physical custody, we affirm the remaining provisions of the order.

Order reversed in part and affirmed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2017

- 17 -