J-S27031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| K. L. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| B. A., | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | No. 54 EDA 2018 |

Appeal from the Order Entered December 18, 2017
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2010-28019

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                        **FILED JUNE 26, 2018**

B.A. ("Father") appeals from the Order entered December 18, 2017, denying the Petition seeking a 90-day custody award filed by K.L. ("Mother") with respect to A.A., the parties' minor child, but imposing a visitation schedule.[1]  After careful review, we affirm in part, vacate in part, and remand for further proceedings.[2]

_____

[1] Although the trial court's written Order was dated December 15, 2017, the court clerk docketed the Order and Notice of Service on December 18, 2017. December 18, 2017.  We have changed the caption accordingly. ***See*** Pa.R.Crim.P. 114(C)(2)(c) (docket entries "shall contain" the "date of service of the order"); Pa.R.A.P. 108(a)(1), (d)(1) (appeal period only begins running on the date the Clerk "mails or delivers copies of the order to the parties").

[2] The Order also denied Father's Petition for Contempt and his Motions for the appointment of a guardian *ad litem* for A.A. and for a mental health evaluation of Mother and Mother's husband.  Father has not challenged those denials in his Appeal.  Mother did not appeal.

Mother and Father married in 1989, separated in 2011, and divorced on August 13, 2013. They have three children, only one of whom is a minor: A.A. (born in December 2000). Father has had full legal and primary physical custody of A.A. since March 2011. Mother has remarried and lives in New York with her husband. Mother has had minimal contact with A.A. since 2012.

In May 2014, the parties took part in a custody conciliation conference where Mother indicated she had not seen the children since 2012 and had last spoken to them in April of 2014. The recommendation was that Mother and the children take part in therapy to avoid reinforcement of feelings of abandonment. Mother did not take any action. In 2015, Mother also filed a custody petition but failed to pursue it.[3]

On August 16, 2017, Mother filed a Petition for Modification of Custody requesting that A.A. participate in a parental reunification program with Mother that would require A.A. to live with Mother for 90 days following their attendance at a four-day seminar in New York. Father subsequently filed a Motion for the Appointment of a Guardian *ad litem* for A.A., a Motion for a Mental Examination of Mother and Mother's husband, and a Petition for Contempt.

The court held a hearing on all Petitions and Motions on December 11, 2017, at which each party appeared *pro se*. Mother testified that she had

---

[3] Mother testified that she did not pursue her previous Petitions because Father and the child "would come to me and say, 'we just need more time, you need to give us more time.'" N.T. Petition to Modify Custody, 12/11/17, 67-8.

asked A.A. if she wanted to attend the reunification program and A.A. declined

the invitation. After Father finished his cross-examination of Mother, the court

stated:

> I can tell you right now there is no way, after not seeing your daughter for four or five years, that I'm going to just automatically say, she's going into your custody for 90 days. Not happening.
>
> . . .
>
> [ ] I can't tell a 17-year-old, who is in the middle of her eleventh grade, in school, who's probably getting ready to take college prep exams and trying to keep grades up in order to do the best this year for purposes of entry into college, I'm not going to tell her for the next 90 days, you're going to be with the mother that haven't seen or spoken to in five years. Not going to do that. That's not in her best interest.
>
> . . .
>
> And at this point, my job is to make sure that the best interests and welfare of the child is protected [*sic*]. If she was younger, it might be a little different. The wedge in this situation is the last four or five years that there's been literally no meaningful contact between you and your daughter. That's the wedge.

N.T. Petition to Modify, 12/11/17, at 48-50.

Father then testified regarding alleged past experiences between Mother

and children, Mother's alleged affairs, and Mother's actions which allegedly

caused her alienation from the children. In response to the court's

questioning, Father testified that asking A.A. to attend counseling with Mother

to see if the relationship between the two of them could be salvaged would

affect A.A. "drastically" because, among other things, Mother alienated the

children. *Id*. at 60. He then noted that A.A. was outside the courtroom and

could testify.

After Father's testimony, the court asked Mother if she wanted her children to come in the courtroom and "tell me why they don't want to make any effort to reconcile with you?" to which Mother responded "No, I don't. Do I have that choice?" *Id*. at 62. At that point the court asked if Mother would like to speak with her children and then directed Mother, A.A., and A.A.'s sister to spend 20 minutes together in the back room to see if it "makes any difference at all in the general outcome of what everybody wants here." *Id*. at 62. After 25 minutes, Mother returned to the courtroom and informed the judge that A.A. was "dead set against anything, any kind of therapy" and that the children could not come up with any alternative ideas. *Id*. at 63-4. Mother then suggested that the only outcome she could see would be reunification counseling with A.A.

When the court asked Father what he thought of dinner between A.A. and Mother once every two weeks, Father suggested that A.A. would decide she did not want to see her. The Court then stated: "Well, it's not going to be [A.A's] decision. Because if she doesn't do it, if I order her to do it, then she is in contempt, and I'll put her in the Youth Center." *Id*. at 70. The court then told Father to encourage A.A. to go to the dinner to avoid the Youth Center. *Id*.

The court also told Mother that if A.A. refuses, Mother could "make her" by filing a petition for contempt, "bringing her in here, and risking her going to the Youth Center and then never speaking to you again. That's what you can risk. And that's the position you put me in." *Id*. at 72. The court informed

Mother that she could also file another Petition for therapy if she felt that at some point she wanted to change dinner visits to therapy. *Id*. at 73.

Following testimony and the above discussion, the court indicated it would enter an order in which a two-hour visitation period would occur between only Mother and A.A. (and A.A.'s sisters if they wanted to join them). N.T. Order at 2.[4]

The court then ordered A.A. to contact Mother no later than 5:00 on a Wednesday to arrange the visit for the following week. The judge stated: "And [A.A.] is going to be considered a party to this order, and because of her age, can be found in contempt if she refuses to comply." N.T. Order at 4. When Father then asked the court to allow A.A. and her sister to testify, the court stated, "I don't think there's any reason for me to do so. I'm not ordering any partial custody to mom. I'm not ordering anything but a b[are] minimum visit every two weeks, and she is going to comply with the order, or I will then see her." *Id*. at 5. After further discussion, the court stated the following:

> Okay. If there is any violation of the order, I would welcome either of you filing a petition immediately. Because as quickly as I will put [A.A.] in the Youth Center for failing to comply with my order, I will terminate the order if [Mother] brings anybody with her to these visits or in any way tries to have these girls engage with anyone else if they don't to engage with the, okay?

---

[4] The court reporter separated the Notes of Testimony of the hearing and the Notes of Testimony of the court's pronouncement of her perspective order into two separate transcripts. However, they occurred in the same proceeding sequentially.

*Id*. at 8.

The trial court entered the Order on its docket on December 18, 2017. On December 26, 2017, Father appealed and filed a "Concise Statement of Errors" pursuant to Pa.R.A.P. 1925(b)(2)(i).

On January 12, 2018, the trial court issued an Order indicating that it had intended its December 18, 2017 Order to be a "Temporary Custody Order" and ordered that "a hearing be scheduled to allow A.A. to testify before a Final Custody Order is entered." Order, dated January 12, 2018, at 2.[5]

On January 17, 2018, this Court issued a Rule to Show Cause upon Father as to why the Appeal should not be quashed as interlocutory. Father responded that nothing in the Notes of Testimony or the December 2017 Order indicate that the Order was temporary or otherwise interlocutory and non-appealable.[6] This Court discharged the Order to Show Cause.

---

[5] On January 16, 2018, Judge Rhonda Lee Daniele's law clerk, Mark C. Sesso, Esq., submitted a letter to this Court indicating that the trial court intended the December 18, 2017 Order to be temporary, and the January 12, 2018 Order indicated that the court would schedule a hearing to permit A.A. to testify "before we issue a Final Custody Order." Letter, dated 1/16/18. Attorney Sesso concluded with a request that this Court quash this Appeal as interlocutory.

[6] Subsequently, this Court granted Father's *pro se* Application for a Stay Pending Appeal, and denied Mother's subsequent *pro se* Motion to Lift the Stay. Father also filed several other *pro se* Motions, which this court denied. None of them is pertinent to the disposition of this Appeal.

The trial court filed an Opinion pursuant to Pa.R.A.P. 1925(a) on February 2, 2018, stating that the January 12, 2018 Order was "intended to expedite a completion of the hearing so a Final Order could be entered." *See* Trial Court Op., dated 2/2/18, at 2. The court requested that we remand the case to permit A.A. and her sister to testify.

In his Brief, Father presents the following issues for our review:

1.  Did Judge Daniele commit legal error and abuse her discretion by refusing to consider evidence of past abuse by the [ ]Mother and A.A.'s well-reasoned preferences regarding any potential change in custody?

2. Did Judge Daniele commit legal error and abuse her discretion by mandating bi-weekly visitation despite the lack of evidence from [ ]Mother that such a change in visitation was in A.A.'s best interests?

3. Did Judge Daniele commit legal error and abuse her discretion by having A.A. and [her sister] to speak with [ ]Mother outside the courtroom rather than taking testimony to complete the record?

4. Did Judge Daniele commit legal error and abuse her discretion by making A.A. a party to the case for contempt purposes?

Father's Brief at 10.

**Finality of December 18, 2017 Order**

As a prefatory matter, we decline the trial court's invitation to quash this Appeal as interlocutory. Our review of the hearing transcript reveals no indication that the court intended the visitation order to be a temporary order. Recognizing that A.A. is soon going to be 18 years old, the court stated that the order was an attempt to foster a reconciliation between Mother and A.A.

*See* N.T. Order, 12/11/17, at 5.  The record shows that the trial court denied Mother's specific custody request, and intended its December 2017 Order to be the final disposition of Mother's Petition for a Change of Custody.  *See* N.T. Order, 12/11/17, at 5, 9 ("I'm not ordering any partial custody to mom.  I'm not ordering anything but a b[are] minimum visit every two weeks;" "Well, there's no need for a guardian *ad litem* because the hearing is over and I've made a decision.").  Accordingly, because the December 18, 2017 Order disposed of Mother's Petition for a Change of Custody, as well as disposing of Father's outstanding Motions filed in response to the Petition, that Order is a final, appealable order.  We, thus, decline to quash this Appeal as interlocutory.

Once Father appealed from the December 18, 2017 Order, the trial court no longer had jurisdiction to proceed further in the matter.  42 Pa.C.S. § 5505 (providing that once a notice of appeal is filed, the trial court may not take further action in the matter); Pa.R.A.P. 1701(a) (after an appeal is taken, the trial court may no longer proceed in the matter except to take action ancillary to the appeal or, among other things, to correct "formal error in papers relating to the matter").  *See, e.g.*, *Prall v. Prall*, 698 A.2d 1338 (Pa. Super. 1997) (quashing appeals taken from orders that had been entered after a party filed a notice of appeal).  Father filed his Appeal on December 26, 2017.  Accordingly, the court's order entered on January 12, 2018, is a legal nullity.

**Standard of Review**

An appellate court's standard of review of a custody or visitation order is of the broadest type.

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad [standard] of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*T.B. v. L.R.M.*, 874 A.2d 34, 37 (Pa. Super. 2005) (citations and internal quotation marks omitted).

**Analysis**

Based on our analysis and disposition, we need not address individually the claims raised by Father. It is well-established that in entering an order pertaining to custody and visitation, a court must base its decision on the best interests of the child. *Id*. at 38. In determining the child's best interests, the trial court must consider the factors set forth in 23 Pa.C.S. §5328.[7] Once the

_____

[7] 23 Pa. C.S. § 5328 provides the following:

   **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

J-S27031-18

court considers those factors, pursuant to Section 5323, it may enter an Order

that appropriately fits with the child's best interests. 23 Pa.C.S. § 5323.

_____

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

"As children grow older, more weight must be given to the preference of the child." **Grieb v. Driban**, 458 A.2d 1006, 1007 (Pa. Super. 1983). **See** 23 Pa.C.S. § 5328(a)(7); **Gianvito v. Gianvito**, 975 A.2d 1164, 1170-71 (Pa. Super. 2009) (observing that the weight to be afforded to the child's preference as to the custodial parent in the context of a custody proceeding varies with the age, maturity, and intelligence of that child, together with the reasons given for the preference). Where the child is of such age and maturity that the court could reasonably conclude that her preference should not be accorded any weight, the court is not required to examine the child. **Hugo v. Hugo**, 430 A.2d 1183, 1186 (Pa. Super. 1981).

Under the circumstances presented here, the trial court did not allow A.A. to testify and, thus, placed no weight on A.A.'s preference. This was unreasonable. The trial court itself apparently recognized this in its Rule 1925(a) Opinion in which it requested a remand to obtain A.A.'s testimony.

Accordingly, we affirm the trial court's denial of Mother's request for a 90-day custody award, vacate the visitation order, and remand for a hearing to take place within 30 days of this Order. In addition to examining A.A. regarding her preferences, the court is reminded to address the custody factors set forth in 23 Pa.C.S. §5328 in rendering its final order.[8]

---

[8] We note that the trial court's threatening A.A. with placement in the juvenile detention center in this custody proceeding between her two parents is both improper and counter-productive under the circumstances. There is no legal

- 11 -

Order affirmed in part and vacated in part; case remanded for further proceedings; jurisdiction relinquished.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/18

---

authority to support such a threat, particularly when the child is not a party to the action. If the trial court determines that A.A. does not want to have dinner with Mother, a more reasonable solution may be to order some type of therapy for A.A. and Mother.